UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PAINTERS DISTRICT COUNCIL NO. 2,      )
et al.,                                )
                                       )
            Plaintiffs,                )
                                       )
      vs.                              )      No. 4:08CV1501-DJS
                                       )
PARAGON PAINTING COMPANY, LLC.,        )
et al.,                                )
                                       )
            Defendants.                )

ORDER

Plaintiffs, Painters District Council No. 2 and its business manager, Kevin Kenny, ("Painters D.C."), several employee benefit plans under the Painters D.C. umbrella ("the Benefit Plans"), and several individuals in their capacities as trustees of those benefit plans ("the Trustees") seek payment of unpaid fringe benefit contributions, union dues, interest, liquidated damages, attorneys' fees, and costs from defendants Paragon Painting Company, LLC ("Paragon") and Paragon Painting Company of Missouri, LLC ("Paragon of Missouri"). Now before the Court are plaintiffs' motion for summary judgment [Doc. #41] and plaintiffs' motion to strike the affidavit of Robyn Ladenberger [Doc. #53], which Paragon submitted in opposition to the motion for summary judgment. These matters have been fully briefed and are ready for disposition. Paragon of Missouri is in default and only the subject of these motions in that plaintiffs argue that Paragon of Missouri is an

alter ego corporation of Paragon and should be jointly and severally liable with Paragon.

## STANDARD OF REVIEW

In considering a motion for summary judgment, the Court will "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." <u>Reich v. ConAgra, Inc.</u>, 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>Id.</u> "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" <u>Burchett v. Target Corp.</u>, 340 F.3d 510, 516 (8th Cir. 2003) (quoting <u>Rose-Maston v. NME Hosps., Inc.</u>, 133 F.3d 1104, 1107 (8th Cir. 1998)).

In ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." <u>Lujan v. Nat'l Wildlife</u>

<u>Fed'n</u>, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a nonmovant must contain specific facts, and general statements will not be supplemented by a court's assumptions. <u>Id.</u> at 889. Further, the Court notes that it is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" <u>White v. McDonnell Douglas Corp.</u>, 904 F.2d 456, 458 (8th Cir. 1990) (<u>quoting</u> <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989)).

## FACTS

The following facts are undisputed for the purpose of the instant motion. Painters D.C. is a "labor organization" within the meaning of section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), representing employees in an industry affecting commerce within the meaning of section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and is an "employee organization" within the meaning of section 3(4) of ERISA, 29 U.S.C. § 1002(4). The Benefit Plans, including the Pension Trust, Welfare Trust, Vacation Trust, and the Apprenticeship and Journeyman Training Trust, are "employee benefit plans" within the meaning of sections 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(3) and 1132(d)(1), and are multi-employer plans

within the meaning of section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). The Trustees comprise the Joint Board of Trustees of each of the Benefit Plans. The Trustees are the "plan sponsor" of their respective benefit plans within the meaning of section 3(16)(B) of ERISA, 29 U.S.C. § 1102(16)(B), and are fiduciaries within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

Paragon is a signatory contractor to a collective bargaining agreement ("CBA") with Painters D.C., having signed on to the agreement on June 7, 2004, and having renewed that agreement on November 7, 2005. Accordingly, Paragon is an "employer" within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. The CBA required Paragon to make contributions to several Painters D.C. trust funds, including the Pension Trust, Welfare Trust, Vacation Trust, and Apprenticeship and Journeyman Training Trust. The CBA also required Paragon to submit union dues to Painters D.C. on behalf of its employees.

Paragon read the CBA and understood the provisions related to fund contributions. Paragon understood the CBA provisions relating to the method for deducting a two-percent administrative dues check-off and vacation pay from union members' pay checks and agreed to comply with those provisions. The CBA bound Paragon to submit fringe benefits, dues remissions, and contributions to the Labor Management Cooperation Fund and reports

4

in accordance with the CBA.  The CBA contains a schedule setting forth the amounts of these required contributions and dues remissions.  Under the terms of the CBA, Paragon was obligated to make weekly reports and contributions on all covered employees in their employ, showing the number of hours worked and contributions due.  The CBA also bound Paragon to the terms of the trust documents establishing each of the Benefit Plans.[1]  The Benefit Plans' trust documents provide the Trustees the right to audit Paragon's books.

Although demand was made, Paragon failed to file reports and make contributions and dues remissions as required by the CBA.[2] Plaintiffs employed an accounting firm to evaluate the amount owed

---

[1]Unlike the prior facts outlined by the Court, Paragon does not explicitly admit this fact.  Paragon denied that it was bound to the terms of the trust documents in response to paragraphs 37 through 40 of plaintiffs' statement of uncontroverted material facts.  Paragon, however, did not support its denial with citation to any supporting evidence.  Under local rules, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."  E.D.Mo. L.R. 7-4.01.  The Court finds that this fact is deemed admitted.

[2]Paragon submits a blanket denial of these facts in its response to plaintiffs' statement of uncontroverted material facts, referring the Court generally to "Exhibit A," Robyn Ladenberger's affidavit.  The Court finds nothing in Ladenberger's affidavit to support Paragon's denials.  On the contrary, Ladenberger's affidavit supports plaintiffs' contention that Paragon did not make the reports or payments required by the CBA.  For example, in paragraph 20, Ladenberger admits that after April 2008, Paragon's employees were paid their fringe benefit contributions directly.  This is precisely the period for which plaintiffs seek relief (April 1, 2008, to present).

to plaintiffs by Paragon.[3]  Plaintiffs' accountant determined the amounts that Paragon was delinquent to each of the Benefit Plans and to Painters D.C.[4]

**DISCUSSION**

## I. Jurisdiction

As an initial matter, the Court notes that in opposition to plaintiffs' motion for summary judgment, Paragon argues that the Court lacks subject-matter jurisdiction over this case.  Paragon argues that the Court lacks jurisdiction because plaintiffs have not exhausted their administrative remedies under the CBA.  Paragon cites <u>Anderson v. Alpha Portland Indus., Inc.</u>, 727 F.2d 177 (8th Cir. 1984), and <u>Hastings v. Wilson</u>, 516 F.3d 1055 (8th Cir. 2008), in support of its argument.

In <u>Anderson</u>, the Eighth Circuit addressed the issue of whether the defendant's retired employees must exhaust grievance procedures before making claims for insurance benefits under plans provided for in the collective bargaining agreement in effect when

---

[3]Paragon denies this fact and cites generally to Ladenberger's affidavit to support its denial, without referring the Court to a specific paragraph.  The Court reviewed Ladenberger's affidavit. Finding no support for the denial, the Court finds that Paragon has admitted that plaintiffs hired an accounting firm to determine the amount of the arrearage.

[4]Again, Paragon denies this fact and cites generally to Ladenberger's affidavit to support its denial.  The Court reviewed the affidavit to find support for Paragon's denial.  Having carefully considered the affidavit, the Court finds no factual support for Paragon's denial of this fact and deems the fact admitted pursuant to Local Rule 7-4.01.

they retired. <u>Anderson</u>, 727 F.2d at 179; <u>see also</u> <u>Anderson v. Alpha Portland Indus., Inc.</u>, 752 F.2d 1293, 1294 (8th Cir. 1985) (en banc). The court found that the contract at-issue did not mandate exhaustion of grievance procedures by the retirees. <u>Id.</u> at 1298. In <u>Hastings</u>, employees of an airline brought suit against the alleged fiduciaries of two pension plans claiming breach of fiduciary duties owed under the Employee Retirement Income Security Act of 1974 ("ERISA"). <u>Hastings</u>, 516 F.3d at 1056. The Eighth Circuit upheld the district court's dismissal finding that the Railway Labor Act ("RLA"), which also applies to the airline industry, mandated arbitration of the employees' claim and thereby deprived the court of subject-matter jurisdiction. <u>Id.</u> at 1059.

Paragon cites <u>Anderson</u> for the proposition that "[a]s a general rule, employees claiming rights under a collective bargaining agreement are required to exhaust remedies provided in the collective bargaining agreement before bringing suit against their employer under § 301 of the LMRA and ERISA." Doc. #49, p. 1. Plaintiffs are not employees seeking benefits under a plan, so Paragon's argument requires the Court to make the logical leap that this general rule also applies to labor organizations, employee benefit plans, and the trustees of those organizations seeking unpaid dues and contributions from an employer. Paragon provides the Court with no citation to authority or any other basis to make that leap. Second, the CBA does not require plaintiffs to exhaust administrative remedies prior to filing suit. In fact, the

7

agreement explicitly states that "disputes concerning contributions for fringe benefits or administrative dues check-off, disputes concerning payment of wages and/or dispute concerning contributions to the Industry Fund need not be processed through the grievance procedure, and suit may be directly instituted." Doc. #41-5, p. 13. Plaintiffs' suit is one concerning fringe benefits contributions and the administrative dues check-off, and therefore, need not be administratively exhausted before filing. Accordingly, the Court finds no support in Paragon's citation to <u>Anderson</u> for its argument that the Court lacks jurisdiction. <u>See</u> <u>Schneider Moving & Storage Co. v. Robbins</u>, 466 U.S. 364, 372-73 (1984)(finding no exhaustion necessary when collective bargaining agreement did not require an administrative proceeding prior to filing suit).

Paragon cites <u>Hastings</u> as an example of a recent Eighth Circuit dismissal for lack of subject-matter jurisdiction in a labor-benefits dispute. The basis for the dismissal in <u>Hastings</u>, however, was the mandatory arbitration provision in the RLA. Paragon does not argue that the RLA applies in this case, and the Court sees no reason why it would. Thus, the Court finds no support in Paragon's brief for its argument that the Court lacks jurisdiction, and the Court will proceed to the merits of plaintiffs' motion for summary judgment.

## II. Plaintiffs' Claims

In their briefs, neither party explicitly acknowledges or

addresses any distinction between the claims brought by the separate plaintiffs. The Court, not having the benefit of that issue being briefed, nevertheless must address the distinction between the claim brought by Painters D.C., the union, and the claim brought by the Benefit Plans and their Trustees.

Throughout the briefs, it seems that the parties assume that section 515 of ERISA governs this entire case. Section 515 is concerned solely with collection of unpaid contributions to multiemployer benefit plans and "creates a federal right of action independent of the contract on which the duty to contribute is based." Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1347 (8th Cir. 1990). Painters D.C. is not a multiemployer benefit plan seeking unpaid contributions, and as such, its claim is not brought under section 515 of ERISA. Rather, Painters D.C.'s claim is an action to recover unpaid sums of money it is allegedly owed under the CBA, a breach of contract claim brought under section 301 of the LMRA. See Trs. of the Colo. Statewide Iron Workers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc., 812 F.2d 1518, 1524 (10th Cir. 1987); see generally Local Union 204 of the Int'l Bhd. of Elec. Workers v. Iowa Elec. Light and Power Co., 668 F.2d 413, 416-19 (8th Cir. 1982)(discussing federal court jurisdiction over breach of contract claims under section 301 of the LMRA). A union's claim against an employer for failure to comply with a collective bargaining agreement is construed in accordance with general

principles of contract law.  See Agathos v. Starlite Motel, 977
F.2d 1500, 1509 (3d Cir. 1992).  The importance of this distinction
is the difference in the available remedies and defenses.  The
prevailing party on a claim under section 515 of ERISA is entitled
to contributions, double interest or interest and liquidated
damages, attorney's fees and costs, and any other appropriate
relief.  29 U.S.C. § 1132(g)(2).  Depending on the terms of the
contract, some of those remedies may not be available under general
contract law.  Likewise, the law recognizes very few defenses for
employers in a section 515 action brought by a multiemployer
benefit plan that would otherwise be available to an employer in a
contract claim brought by a union.  See Cent. States, 919 F.2d at
1348-49.  In light of these distinctions between the claims by the
Benefit Plans and the claim by Painters D.C., the Court will
address the claims separately.

**A. The Benefit Plans' Claims**

The Benefit Plans bring claims against Paragon under
section 515 of ERISA, which allows multiemployer benefit plans to
collect unpaid contributions from an employer that is bound by the
terms of a collective bargaining agreement to contribute to the
benefit plans.  The Benefit Plans claim that Paragon breached the
CBA and violated section 515 of ERISA by failing to file reports
and make required contributions.  Section 515 of ERISA provides:

> Every employer who is obligated to make
> contributions to a multiemployer plan under the

10

> terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law,
> make such contributions in accordance with the
> terms and conditions of such plan or such
> agreement.

29 U.S.C. § 1145. In Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 87 (1982), the Supreme Court noted that section 515 was enacted "because 'simple collection actions brought by plan trustees [had] been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions' and steps [had to] be taken to 'simplify delinquency collection.'" Id. (quoting S. Comm. on Labor and Human Resources, 96th Cong., S. 1076-The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm. Print 1980)).

As established above, it is undisputed that the Benefit Plans are multiemployer benefit plans under ERISA and that Paragon is an employer under ERISA. It is undisputed that Paragon was contractually bound by the CBA and the trust-creation documents to submit timely reports and make contributions to the Benefit Plans. It is also undisputed that Paragon failed to do so between April 1, 2008, and August 20, 2009.

Paragon argues that it "satisfied its obligation to the Union members by paying the fringe benefit contributions to its employees after April, 2008." Doc. #49, p. 2. Paragon does not cite any law supporting this argument, nor does Paragon cite a provision in the CBA or the trust-creation documents that would

11

allow it to satisfy its obligations by paying fringe benefits to employees rather than the Benefit Plans. Furthermore, the Court carefully considered the CBA and the trust-creation documents and found no such provision. Accordingly, under the undisputed evidence, Paragon is liable to the Benefit Plans for failing to comply with its obligation to submit reports and make contributions unless it can demonstrate by affidavit or other evidence that a genuine issue of material fact exists as to a valid defense.

Courts of appeals have interpreted section 515 as precluding employers from raising a variety of contract defenses as a means of avoiding the obligation to contribute to employee benefit plans. Agathos, 977 F.2d at 1505. The Court's research reveals only three recognized defenses: (1) the pension contributions themselves are illegal; (2) the collective bargaining agreement is void; and (3) the employees have voted to decertify the union, thus prospectively voiding the collective bargaining agreement. Id.; see Kaiser Steel, 455 U.S. at 86-88; Cent. States, 919 F.2d at 1348-49.

Paragon asserts one purported defense to liability. Paragon argues that "Plaintiffs are not entitled to recover under a contract they materially breached." Doc. # 49, p. 3. This defense is not recognized as relieving an employer from its obligation to contribute to a benefit plan. See Cent. States, 919 F.2d at 1348-49. Accordingly, Paragon cannot demonstrate that a genuine issue of fact exists as to a valid defense, and the Court

finds that Paragon is liable to the Benefit Plans under section 515 of ERISA.

Having concluded that Paragon is liable to the Benefit Plans, the Court turns to the issue of damages. Section 502(g)(2) of ERISA requires the Court to award the Benefit Plans unpaid contributions, double interest or interest and liquidated damages, attorney's fees and costs, and any other appropriate relief. 29 U.S.C. § 1132(g)(2). The Benefit Plans have submitted uncontested evidence of the unpaid contributions, the liquidated damages and interest, and the attorney's fees and costs allowed by 502(g)(2).[5]

With respect to the each of the Benefit Plans, the Court finds the following: (1) the Welfare Trust is owed $136,690.47 for contributions and $46,620.75 for liquidated damages and interest; (2) the Pension Trust is owed $105,308.66 for contributions and $35,774.88 for liquidated damages and interest; (3) the Vacation Trust is owed $25,644.58 for contributions and $8,746.54 for liquidated damages and interest; and (4) the Apprenticeship and Journeyman Training Trust is owed $9,469.83 for contributions and $3,218.47 for liquidated damages and interest.

---

[5]Again, Paragon denies these facts by referring generally to Ladenberger's affidavit, without reference to any specific fact in the affidavit. The Court reviewed her affidavit for evidence that would controvert the Benefit Plans' evidence of unpaid contributions, liquidated damages, interest, and attorney's fees and costs. The Court found no support for Paragon's denial. It appears that Paragon solely rested on the above-rejected argument that it was not liable in this case and did not provide any evidence to controvert the Benefit Plans' measure of damages.

Pursuant to 502(g)(2) the Court must also award attorney's fees and costs. The Benefit Plans submitted uncontested evidence that they incurred $30,941.46 in attorney's fees and $1,979.62 in costs. Thus, the Court finds the Benefit Plans are entitled to $32,921.08 in fees and costs.

## B. Painters D.C.'s Claim

Painters D.C. brings a claim against Paragon to recover unpaid sums allegedly owed under the CBA. A claim brought by a union against an employer for a breach of a collective bargaining agreement is governed by general contract law. See Agathos, 977 F.2d at 1509. In Missouri, a party seeking to establish a breach of contract claim must prove: "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." Evans v. Werle, 31 S.W.3d 489, 493 (Mo. App. 2000).

As established above, it is undisputed that a valid contract existed between Paragon and Painters D.C., which required Paragon to make dues remittances and Industry Fund and Labor Management Cooperation Fund contributions to Painters D.C. It is also undisputed that Paragon failed to do so between April 1, 2008 and August 20, 2009. Unlike the Benefit Plans' claims, Paragon does not argue that it satisfied its obligations under the CBA by paying the union dues and fund contributions directly to its employees. Accordingly, absent a showing that a genuine issue of

fact exists as to a valid defense, Paragon is liable for failing to comply with its obligations under the CBA.

In defense of its failure to pay, Paragon argues that "Plaintiffs are not entitled to recover under a contract they materially breached." Doc. #49, p. 3. Paragon argues that Painters D.C. breached the contract in two ways: (1) by interfering with Paragon's contractual obligations and ability to obtain future contracts by telling contractors that Paragon was "out of business," and (2) by refusing to make arrangements with Paragon to assist in getting caught up with the dues owed, purportedly in violation of the anti-discrimination provision of the CBA.

With regard to the first alleged breach of the CBA by Painters D.C., Paragon relies on Ladenberger's affidavit to place this defense at issue. Specifically, Paragon cites paragraph 12 of Ladenberger's affidavit, which states that Ladenberger "was told [sic] a business agent of Painters District Council #2, that the Union advised Coil Construction that Paragon was 'out of business' depriving Paragon the opportunity to work on [sic] Ameren/UE job and the Jarrod Jewelers Job. The jobs were given to Custom Coatings." Doc. #48-2, p. 2. However, the Court concludes below that paragraph 12 of Ladenberger's affidavit should be stricken, so Paragon's argument that Painters D.C. interfered with Paragon's relationships with other businesses is, therefore, wholly unsupported. Accordingly, Paragon is not relieved of its obligation to pay its debts under the CBA by this argument.

15

The Court now turns to Paragon's argument that Painters D.C. breached the CBA by refusing to make arrangements to assist Paragon in getting caught up with the dues owed, purportedly in violation of the anti-discrimination provision of the CBA. The anti-discrimination provision, section 8, states that "[t]he Employer and/or the Union shall not discriminate against any person because of or on account of age, race, color, sex, national origin, ancestry or religion in the hire, discharge, transfer, layoff, discipline or in the assignment of jobs or with respect to any other terms or conditions of employment." Doc. #41-5, p. 14. In its briefs, Paragon specifically argues that Painters D.C. breached the CBA "by refusing to enter payment agreements with Defendant, a female operated company, and entered payment agreement [sic] with other, male owned and operated companies." Doc. #47, p. 2. The only evidence Paragon cites in support of this argument is affidavit testimony by Ladenberger in which she states that another signatory employer to the CBA, CCR, Inc., was allowed to make a payment arrangement when it was behind in payments. The Court notes that Paragon is female-owned, but Ladenberger does not say whether CCR, Inc. is male- or female-owned.

First, the Court reviewed the CBA and could not find a provision that would require Painters D.C. to set up payment plans with employers who have breached the CBA by failing to pay union dues. Second, Paragon does not argue or present evidence that Painters D.C. excused male-owned employers from their debts. As

16

far as the Court can determine from the evidence presented by Paragon, these unidentified, male-owned employers to which Paragon refers were required to pay the union dues they owed.  Given that the CBA did not require Painters D.C. to allow payment plans and that Paragon presents no evidence that male-owned employers were excused from paying union dues, the Court does not see how Paragon's argument would excuse it from its obligation to pay the union dues it owes under the CBA.  Paragon does not cite any case law or other authority to support this defense, and the Court finds that Paragon has not raised a genuine issue of fact for trial with this purported defense.

Having found that Paragon breached the CBA and that Paragon has no valid excuse for this breach, the Court will consider the issue of damages.  In a breach of contract case, the goal in awarding damages should be to place the non-breaching party in the position they would have been in absent the breach of contract.  Fire Sprinklers, Inc. v. Icon Contracting, Inc., 279 S.W.3d 230, 235 (Mo. App. 2009).  In this case, that goal would be accomplished by requiring Paragon to pay any amounts that it failed to pay under the CBA.  Painters D.C. has submitted uncontested evidence of $13,905.77 in unpaid dues, $4,009.14 in unpaid contributions to the Industry Fund, and $1,209.67 in unpaid

contributions to the Labor Management Cooperation Fund.[6]  The Court

will grant Painters D.C.'s motion for summary judgment in those

amounts.

Unlike the Benefit Plans' claims, Painters D.C. is not

entitled to liquidated damages, interest, or attorney's fees under

a statute, and therefore, must provide some other basis for such

awards.  Painters D.C. argues that it is entitled to such amounts

under section 4 of the CBA, and Paragon does not dispute this

argument.  Painters D.C. has submitted uncontested calculations of

these amounts, including $4,679.58 of liquidated damages and

interest on the unpaid dues, $3,218.47 of liquidated damages and

interest on the unpaid Industry Fund contributions, $412.61 of

liquidated damages and interest on the unpaid Labor Management

Cooperation Fund contributions, and $30,941.46 of attorney's fees,

which the Court will award.[7]

## III. Alter Ego Liability of Paragon of Missouri

Having determined Paragon's liability, the Court turns to

plaintiffs' argument that Paragon of Missouri should be jointly and

severally liable for that amount because Paragon and Paragon of

_____

[6]As explained previously, Paragon denies plaintiffs' evidence of
damages by referring generally to Ladenberger's affidavit, without
reference to any specific fact in the affidavit.  The Court reviewed her
affidavit for evidence that would controvert the evidence of damages.
The Court found no support for Paragon's denial.

[7]The Court does not award the $30,941.46 in attorney's fees twice,
but Painters D.C. is entitled to share in that amount awarded to the
Benefit Plans.

Missouri are alter ego corporations. Alter ego liability under section 515 of ERISA protects the federal interest in the solvency of multiemployer benefit plans by enabling ERISA trustees to recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations. Flynn v. R.C. Tile, 353 F.3d 953, 958 (D.C. Cir. 2004). A corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances. Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997). The Eighth Circuit has held that, when multiemployer benefit plans seek unpaid contributions from an employer under section 515, the alter ego doctrine as developed under corporate law applies. Id. Under corporate law principles, the legal fiction of the separate corporate entity may be rejected in the case of a corporation that: (1) is controlled by another to the extent that it has independent existence in form only, and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud. Id. Thus, control by one company over its alleged alter ego is necessary under the corporate law standard. Id.

Plaintiffs argue that Paragon of Missouri "was organized, in part, to avoid liabilities" Paragon owed to Painters D.C. Plaintiffs' only supporting evidence for this argument is "Exhibit L," and plaintiffs did not submit an Exhibit L to the Court. Therefore, the Court finds that plaintiffs' argument for summary

19

judgment on the issue of alter ego liability is unsupported by evidence and must be denied at this time.

**PLAINTIFFS' MOTION TO STRIKE**

Painters D.C. has moved to strike paragraph 12 of Ladenberger's affidavit, arguing that it constitutes hearsay, making it evidence that is not competent upon a motion for summary judgment. Hearsay is an out-of-court statement made by someone other than the declarant "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Under Federal Rule of Civil Procedure 56(e), an "opposing affidavit must be made on personal knowledge, set out facts that would be admissible evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e). Where an affidavit does not meet these requirements, it must be disregarded. See G.D. Searle & Co. v. Charles Pfizer & Co., 231 F.2d 316, 318 (7th Cir. 1956). Hearsay statements within an affidavit opposing summary judgment do not comply with Rule 56(e) and should not be considered. Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir. 1984).

It is apparent from her testimony that Ladenberger was not a party to the alleged conversation between Painters D.C. and Coil Construction. Thus, she has no personal knowledge of that alleged conversation, and her affidavit testimony is a recounting of an out-of-court statement allegedly made to her by an agent of Painters D.C. Paragon presents that statement for the Court's

consideration of the truth of the matters asserted, namely that Painters D.C. told a construction company that Paragon was out of business.  Paragon does not oppose Painters D.C.'s motion to strike.  Considering that the motion to strike is unopposed and that paragraph 12 constitutes hearsay, the Court will strike paragraph 12 from the record and not consider it.

For the above stated reasons,

**IT IS HEREBY ORDERED** that plaintiffs' motion to strike the affidavit of Robyn Ladenberger [Doc. #53] is granted with respect to paragraph 12 of the affidavit and denied, without prejudice, as moot with respect to the remainder of the challenged paragraphs.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment [Doc. #41] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is granted with respect to the claims asserted against Paragon for the damages stated in this order and a separate partial judgment will be entered this day.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is denied without prejudice with respect to the claim for alter ego liability.

**IT IS FURTHER ORDERED** that the facts established above are not genuinely at issue and are treated as established for the remainder of this action.

**IT IS FURTHER ORDERED** that the trial of the matter is continued to the **June 14, 2010** trial docket.

**IT IS FURTHER ORDERED** that the parties may file, on or before, **March 15, 2010** additional dispositive motions regarding the issue of alter ego liability.

Dated this ___3rd___ day of February, 2010.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE